JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
SOPHIA REBECCA-MARIE (SBN 345972)
sophia@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.I., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); DARRELL SMITH; ISAAC VENEGAS; FNU WILLIAMS; RAY GARCIA; and DOES 1-25, inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR:** <br> 1. **Sexual Abuse;** <br> 2. **Gender Violence;** <br> 3. **Sexual Battery;** <br> 4. **Intentional Infliction of Emotional Distress;** <br> 5. **Negligent Infliction of Emotional Distress;** <br> 6. **Battery;** <br> 7. **Failure to Protect; and** <br> 8. **Negligence** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     Beginning in approximately 2019, Defendant DARRELL SMITH (A/K/A "DIRTY DICK SMITH") ("SMITH"), ISAAC VENEGAS ("VENEGAS"), and FIRST NAME UNKNOWN WILLAMS ("WILLIAMS"), correctional officers at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United

THE PRIDE
LAW FIRM

- 1 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

States"), sexually assaulted and harassed  Plaintiff R.I. ("Plaintiff"), a minimum-security inmate, in violation of federal and state law.

2.     Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice ("DOJ") promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3.     Defendant SMITH, VENEGAS, and WILLIAMS, agents and employees of FCI Dublin, repeatedly subjected Plaintiff to sexual abuse and harassment. In doing so, Defendants violated Plaintiff's rights under the U.S. Constitution and California law. Defendants further committed multiple common law torts against Plaintiff, as recognized under California law.

4.     Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020 and the warden of FCI Dublin from November 2020 to July 2021 – the period that Plaintiff was being abused by Defendants. As the warden, Garcia was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. Garcia was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

5.     GARCIA was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

6.     GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was

in fact a serial rapist of inmates, and he was clearly tolerating abuse by many more of his underlings, including SMITH, VENEGAS, and WILLIAMS.

7. GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused. Despite this knowledge, GARCIA did not do anything to stop it, even though he had a duty to do so. Due to the fact that GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

8. GARCIA had actual knowledge that inmates complained about the assaults. GARCIA knew or should have known that the inmates were subjected to retaliation. Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused. Had GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused. GARCIA's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

9. PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to GARCIA. During GARCIA's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

10. With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, GARCIA failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering GARCIA and his subordinate correctional officers and employees the nickname "the Rape Club."

11. Further, UNITED STATES, GARCIA, and others inadequately supervised and trained the prison's correctional officers and other employees which was a substantial factor in causing Plaintiff's abuse.

12. As a result of all Defendants' actions, Plaintiff suffered numerous

emotional injuries and incurred severe personal injuries, which continue to affect her today.

13. Plaintiff brings this civil action and asserts claims: (1) against SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against SMITH, VENEGAS, and WILLIAMS pursuant to various California common law torts and statutes; and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims committed by Defendants arising under California common law committed within the course and scope of their federal office or employment.

14. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## **JURISDICTION AND VENUE**

15. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims. The Court also has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy.

16. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

THE PRIDE
LAW FIRM

- 4 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

18.    Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

19.    Plaintiff is an individual and a citizen of Utah, where she is domiciled. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

20.    Upon information and belief, Defendant DARRELL SMITH (A/K/A "DIRTY DICK SMITH") is an individual and citizen of Florida, where he is domiciled. During the relevant period, DARRELL SMITH (A/K/A "DIRTY DICK SMITH") worked as a correctional officer ("CO") at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, DARRELL SMITH (A/K/A "DIRTY DICK SMITH") was acting within the scope of his official employment, or with the BOP's permission and consent.

21.    Upon information and belief, Defendant VENEGAS, is an individual and citizen of California, where he is domiciled. During the relevant period, VENEGAS worked as a correctional officer ("CO") a FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, VENEGAS was acting within the scope of his official employment, or with the BOP's permission and consent.

22.    Upon information and belief, Defendant FIRST NAME UNKNOWN WILLIAMS, is an individual and citizen of California, where he is domiciled.

- 5 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

During the relevant period, WILLIAMS worked as a correctional officer ("CO") a FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, WILLIAMS was acting within the scope of his official employment, or with the BOP's permission and consent.

23.    Upon information and belief, Defendant GARCIA is an individual and citizen of California. During the relevant period, GARCIA worked as the warden at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting within the scope of his official employment, or with the BOP's permission and consent. GARCIA is currently serving his sentence in BOP custody, and is housed in the State of Kansas.

24.    Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

25.    Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

26.    Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

### A.  PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate

27.  PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

28.  PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

29.  First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

30.  Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

31.  Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71

- 7 -
PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

32.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

33.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

34.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

35.    Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

36.    Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

37.    Defendants repeatedly violated these PREA regulations.

---

[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).
[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**B.     Defendant SMITH routinely subjected Plaintiff to sexual abuse and harassment**

38.     Plaintiff began her time at FCI Dublin in approximately 2019. SMITH sexually abused Plaintiff throughout the entirety of her incarceration at FCI Dublin.

39.     SMITH immediately began flirting with Plaintiff when he first met her. Whenever Plaintiff went to the officers' station, SMITH would compliment her. It first started with SMITH telling her she is "beautiful" but over time it progressed to more blatantly sexual comments.

40.     On one occasion, SMITH told Plaintiff he wanted to see her in the shower and asked her to leave the shower curtain open so he could watch. Because of this statement, Plaintiff felt so nervous to shower she asked another woman to wait outside the curtain while Plaintiff showered. Despite this, SMITH still showed up and asked the other woman to leave.

41.     SMITH would also approach Plaintiff while she was out of her cell and ask to see her breasts. When Plaintiff told him "No," SMITH told her that he could make her time at Dublin "really difficult" if she did not cooperate with him.

42.     On multiple occasions, SMITH locked Plaintiff and her cellmates in their cell at night.

43.     SMITH had a reputation for using his disciplinary power as leverage to force the incarcerated women to perform sexual favors.

44.     While at Dublin, Plaintiff was in a romantic relationship with another woman. At times, Plaintiff and her girlfriend would cover the window the cell so they could be alone and engage in consensual sex.

45.     SMITH noticed the covering of the cell window and entered the cell. SMITH pulled out his penis and began to masturbate while watching the two women. Plaintiff and her girlfriend protested SMITH's actions, but he refused to leave because the women were not supposed to engage in personal relationships.

46.     The next day, SMITH called Plaintiff to officers' station and told her

THE PRIDE
LAW FIRM

- 9 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

she had to do "extra duty" because of her sexual activity with her girlfriend. SMITH took Plaintiff to the utility closet and as Plaintiff bent over to grab a spray bottle, SMITH reached forward and began to rub Plaintiff' vagina over her clothing, he then put his hand down her pants and began to digitally penetrate her. SMITH also reached up Plaintiff's shirt and began to grope her breasts. SMITH was rubbing his erect penis on her backside the entire time he assaulted her.

47. One time, Plaintiff missed the 12:00 "count," and SMITH pulled her from her cell at 2:00am that night. SMITH took Plaintiff to the officers' station and asked if she wanted to get a "shot" (disciplinary write-up) for her behavior. Plaintiff indicated that she did not. SMITH then moved closer to Plaintiff, at first, he began to fondle Plaintiff over her clothing, he then put his hand inside her pants and under her underwear, he then digitally penetrated her vagina. SMITH began to masturbate himself while he digitally penetrated Plaintiff.

48. SMITH then pulled out his penis and told Plaintiff to finish masturbating him while he continued to digitally penetrate Plaintiff and grope her breasts under her shirt. SMITH then told Plaintiff he wanted to have sex with her. SMITH stood up and began to rub his penis up and down Plaintiff's exposed buttocks and vagina. SMITH then began to insert his penis inside Plaintiff. Plaintiff pulled away telling SMITH she thought she heard someone and began to pull her pants up. SMITH then assured Plaintiff he was not going to write her up for disciplinary action.

49. SMITH digitally penetrated Plaintiff at the officers' station on at least two occasions.

50. After these incidents, SMITH's harassment of Plaintiff and her girlfriend increased. SMITH started to enter their cell and force them to perform sexual acts for each other while he watched and masturbated. SMITH did this continuously until Plaintiff left Dublin in 2021.

51. As a direct result of this abuse, intimidation, and coercion and rape of Plaintiff, Plaintiff was prevented from safely reporting SMITH's conduct or asserting

her legal rights during incarceration.

**C.   Defendants VENEGAS and WILLIAMS routinely subjected Plaintiff to sexual abuse and harassment**

52. SMITH was not the only CO who watched Plaintiff and her girlfriend have sex in their cell.

53. In approximately 2021, VENEGAS came to Plaintiff's cell on at least five occasions and would ask Plaintiff and her girlfriend to show him something.

54. Plaintiff and her girlfriend were afraid of retaliation from VENEGAS and the other COs. VENEGAS would watch Plaintiff and her girlfriend have sex through the window.

55. WILLIAMS also watched Plaintiff and her girlfriend have sex through the window at least twice.

56. As a direct result of this abuse, intimidation, and coercion of Plaintiff, Plaintiff was prevented from safely reporting VENEGAS and WILLAMS' conduct or asserting her legal rights during incarceration.

**D.   FCI Dublin is known for its culture of tolerating sexual misconduct**

57. Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, ten BOP employees have been charged by the DOJ with sexual abuse of FCI Dublin inmates. Of those ten, seven have been convicted and three are still awaiting trial. DOJ has not yet finished its investigation; more indictments may follow. Twenty-five total employees were under investigation as of May 2022.[17]

58. The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report [18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- Warden GARCIA was sentenced to 70 months prison based on his sexual abuse of multiple FCI Dublin women and his subsequent lies to federal investigators. He forced women to pose for pornographic pictures for him and showed them photographs of his own penis. Warden Garcia also groped women's breasts and buttocks and forced them to strip for him.

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against CO William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

- 12 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

in predatory conduct with at least six women from 2014 to 2019.

- Between approximately June of 2020 and September of 2020, CO Ross Klinger sexually abused at least three inmates. For example, CO Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse. He gave money and gifts to both the women and their families, and he continued to have sexual intercourse with the women even after they left BOP custody.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said, "Look, it's hard for you."

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- CO Saucedo watched inmate A.J. in the shower on multiple occasions. CO Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. CO Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by CO Saucedo when he forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with CO Jeffrey Wilson, a nurse at the BOP. CO Wilson also forced inmate L.A. to show him her breasts. CO Wilson was arrested in June of 2025. The DOJ alleges he also lied to federal agents and brought contraband to his victims.

- A temporary duty medical employee named Jay Alexander (exact name unknown) abused an inmate who sought out medical treatment on her back. He pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Andrew Jones would tell inmate J.C., "Get on your knees" and, "Suck my dick." CO Jones forced at least three inmates to perform oral sex or have sexual intercourse with him, and he threatened them with violence. CO Jones was prosecuted by the DOJ and sentenced to eight years prison.

59.    Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, were reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

60.     In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security-level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category. Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022.

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
| --- | --- | --- | --- |
| BOP | 315 | 0 (0%) | 237 |
| Residential | 25 | 0 (0%) | 12 |

61.     Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

62.     Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R. 115.401(a).

63.     A PREA Audit Report for FCI Dublin was completed and signed on June 14, 2017.

64.     That report found that FCI Dublin met or exceeded PREA standard.

65.     The next final PREA audit report was March 12, 2022.

66.     The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

67. The audit was completed after Warden Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

68. In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

69. GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. CO Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and was sentenced to one year home confinement as a result of his substantial cooperation with the DOJ in providing information about other abusers at FCI Dublin. A federal jury convicted CO Bellhouse of five counts of sexually abusing female inmates; he was sentenced to 5 years prison. Chaplain Highhouse pleaded guilty to sexual abuse of a ward and was sentenced to 7 years prison. CO Chavez pleaded guilty to sexual abuse of a ward

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

and was sentenced to 20 months prison. CO Nakie Nunley pleaded guilty to sexual abuse of a ward and was sentenced to 6 years prison. Multiple federal charges are pending against CO Darrell Smith aka "Dirty Dick" Smith, CO Jeffrey Wilson, and CO Lawrence Gacad.  Additionally, in March of 2022, CO Sergio Saucedo and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

70.    Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

71.    In August of 2023, a class action lawsuit was filed against the BOP and FCI Dublin officials. *See California Coalition for Women's Prisoners et al. v. United States et al.*, No. 4:23-cv-4155-YGR (N.D. Cal.). The Honorable Yvonne Gonzalez-Rogers, the presiding judge in that case, appointed a Special Master to oversee Dublin after determining that it was "a dysfunctional mess" wherein the BOP had "proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years." *See id.* (ECF No. 222, at 1).

72.    Shortly thereafter, in April of 2024, the BOP shut down FCI Dublin. Then-Director of the BOP Colette S. Peters acknowledged that the facility was "not meeting expected standards" despite the fact that the BOP had taken "unprecedented steps and provided a tremendous amount to address culture, recruitment and retention, aging infrastructure – and most critical – employee misconduct."[21] The closing came after the release of a report that demonstrated critical levels of black

---

[21] Lisa Fernandez, *FCI Dublin Closing, Women Transferred to Prisons Across U.S.*, KUTV (Apr. 16, 2024), https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

mold and asbestos in the facility, which had resulted in respiratory issues and rashes to the incarcerated women.[22]

73.    On June 5, 2024, the Special Master issued her first report regarding FCI Dublin, finding that it had "a cascade of failure in critical institutional systems and areas," and focusing in particular on the prison's significant problems with inadequate mental health treatment, discipline and due process, and inadequate PREA protocol.[23] The Special Master stated that it was "unconscionable that any correctional agency could allow incarcerated individuals under their control and responsibility to be subject to the conditions that existed at FCI-Dublin for such an extended period of time without correction."[24]

74.    In December of 2024, the United States entered into a landmark settlement in which $116 million was paid to 116 survivors of sexual abuse at Dublin.[25]

75.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

---

[22] *Id.*

[23] Wendy Still, First Report of the Special Master Pursuant to the Court's Order of March 26, 2024 (Jun. 5, 2024), at 28; https://s3.documentcloud.org/documents/25030691/fci-dublin-special-master-report.pdf

[24] *Id.* at 13.

[25] Lisa Fernandez, *Bureau of Prisons to pay $116M to more than 100 FCI Dublin sex assault survivors*, KTVU (Dec. 17, 2024); https://www.ktvu.com/news/bureau-prisons-pay-115m-more-than-100-fci-dublin-sex-assault-survivors.

THE PRIDE LAW FIRM

- 18 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## FTCA STATUTE OF LIMITATION AND ADMINISTRATIVE EXHAUSTION

76.    This action is, at least in part, brought pursuant to the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680.

77.    The FTCA provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. (28 U.S.C. § 2401(b).)

78.    As described herein, Plaintiff was subjected to repeated sexual abuse by correctional officers.

79.    During her incarceration, Plaintiff was threatened, intimidated, and retaliated against by correctional officers. She felt like she became a target while at Dublin and even after she left. The correctional officers had the power to take away good time and control when she got out. When she was released from Dublin, she remained in fear they would send her back to prison. Plaintiff remains on probation and therefore under the legal custody and control of the Bureau of Prisons, which continues to dictate her movements, restrict her liberty, and subject her to supervision and sanctions.

80.    These threats created a constant state of fear that rendered it impossible for Plaintiff to report her claims or to pursue her legal rights while incarcerated. Even after her release, the threats made against Plaintiff and the

THE PRIDE
LAW FIRM

- 19 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

continued control and authority of her custodial status, the severe trauma, psychological distress, and post-traumatic stress disorder resulting from her sexual abuse and retaliation continued to prevent her ability to seek relief.

81. Plaintiff timely presented her FTCA claim to the BOP on January 27, 2025. Plaintiff remains under the custody and control of the BOP on probation. Probation imposes continuing restrictions on Plaintiff's liberty, subjects her to supervision and sanctions, and perpetuates the same coercive conditions of control and fear of retaliation that prevented her from asserting her claim earlier.

82. Alternatively, Plaintiff is entitled to equitable tolling for her FTCA claim received by the BOP on January 27, 2025.

83. The United States Supreme Court determined the FTCA's statute of limitations is non-jurisdictional and subject to equitable tolling. (*United States v. Wong*, 575 U.S. 402, 420 (2015). Equitable tolling applies when (1) a plaintiff pursued her rights diligently, and (2) extraordinary circumstances prevented timely filing. (*Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013).)

84. Courts have recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, and coercion prevented timely filing. (See e.g., Order granting in Part and Denying in Part Motion to Dismiss at 1, *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24.; *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (equitable tolling appropriate where sexual abuse and resulting post-traumatic stress disorder rendered plaintiff unable to timely pursue claims.).)

85. Plaintiff faced extraordinary circumstances which prevented the filing of her FTCA claim.

86. Because Plaintiff remains on probation, she continues to experience extraordinary circumstances that prevent her from freely accessing the courts or safely pursuing her claims. As long as she remains under BOP custody and control, the threats and coercion that silenced her persists.

87. Additionally, the prolonged sexual abuse, repeated threats, retaliation by corrections officers, and lasting psychological effects of the substantial sexual abuse made it impossible for her to assert her rights within the usual statutory deadline.

88. In February 2022, U.S. Representative Jackie Speier went to FCI Dublin to further investigate the potential abuse occurring by BOP and BOP employees. Representative Speier was prevented from speaking with several inmates who had reported abuse and was instead directed to speak only with staff members.[26] This restriction of access to incarcerated survivors of sexual abuse further demonstrated a deliberate effort by FCI Dublin and the BOP to obstruct independent oversight and investigation. This was a continued pattern of cover-up and suppression of reports of abuse at the facility.

89. A court-appointed Special Master has confirmed that during the time of Plaintiff's incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place," and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions that extended their incarceration.[27]

90. Judge Yvonne Gonzalez Rogers found "shocking constitutional violations" at FCI Dublin, including systemic failures by the BOP that intentionally disregarded inmates' rights for years despite being fully aware of ongoing abuse or retaliation.[28]

91. These wrongful acts and omissions by The United States and

---

[26] Associated Press, *Whistleblowers Say They're Bullied for Exposing Prison Abuse*, COLUMBIAN (February 24, 2022), https://www.columbian.com/news/2022/feb/24/whistleblowers-say-theyre-bullied-for-exposing-prison-abuse/.
[27] Lisa Fernandez, *FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison*, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, *Special Master Issues 1st Report on FCI Dublin Sex Assault*, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, *FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge*, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge.
[28] Lisa Fernandez, *'Shocking' Constitutional Violation at Now-Closed FCI Dublin: Judge*, KTVU (May 7, 2024), https://www.ktvu.com/news/judge-cites-shocking-constitutional-violations-now-closed-fci-dublin.

THE PRIDE
LAW FIRM

- 21 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Defendants created an environment in which it was impossible for Plaintiff to assert her rights. The extraordinary circumstances of continuing probation, prolonged sexual abuse, coercion, intimidation, and post-traumatic harm directly prevented Plaintiff from pursuing her claim.

92.    Plaintiff acted diligently under her circumstances. Once Plaintiff was able, she exhausted her claims against the United States by presenting an FTCA claim in January 2025. Further, Plaintiff felt safer to assert her claim after she learned numerous other women who were incarcerated at FCI Dublin had come forward in December 2024. With the knowledge that other women had safely reported the ongoing sexual abuse and retaliation, Plaintiff presented her FTCA claim.

93.    Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.

94.    Under the FTCA (28 U.S.C. § 2675(a)), if a federal agency fails to issue a final disposition on a claim within six months, a Plaintiff may consider this a final denial of her claim. The BOP has neither accepted nor denied Plaintiff's claim and over six months have passed. Thus, Plaintiff considered this a final denial of her claim such that she may bring her claim in this Court

95.    Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff's statute of limitation prevents this very result. Without the equitable tolling of Plaintiff's statute of limitation Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## CLAIMS FOR RELIEF
## CLAIM ONE
## EIGHTH AMENDMENT, CRUEL AND UNUSUAL
## PUNISHMENT – SEXUAL ABUSE
### (Against SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive)

96.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

97.    Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive.

98.    At all material times, SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

99.    SMITH, VENEGAS, WILLIAMS, and GARCIA violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Dublin.

100.    SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff occurred under coercive circumstances.

101.    By intentionally subjecting Plaintiff to abusive sexual acts SMITH, VENEGAS, WILLIAMS, and GARCIA, acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification. The inhumane conditions of confinement caused by SMITH, VENEGAS, and WILLIAMS' repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

102.    GARCIA was the warden during the period that Plaintiff was being abused by SMITH, VENEGAS, and WILLIAMS. As the warden, GARCIA was

responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

103. GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified SMITH, VENEGAS, and WILLIAMS' behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

104. GARCIA had knowledge of abuses occurring at FCI Dublin prior to the sexual abuse of Plaintiff. But he did nothing to stop it. GARCIA had a legal duty to investigate complaints of abuse. He did not investigate, among other omissions. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. GARCIA knew or should have known that SMITH, VENEGAS, and WILLIAMS were sexually abusing Plaintiff. GARCIA purposely denied Plaintiff protection from the known and substantial risk of serious harm of abuse by FCI Dublin employees.

105. SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

106. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

107. Plaintiff makes these allegations against DOES 1-25, inclusive.

THE PRIDE
LAW FIRM

- 24 -

## CLAIM TWO

## GENDER VIOLENCE (Civ. Code § 52.4)

### (Against SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive)

108. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

109. Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against SMITH, VENEGAS, WILLIAMS, and DOES 1-25.

110. Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

111. SMITH, VENEGAS, and WILLIAMS discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by subjecting her to sexual acts under the coercive conditions that were present between them.

112. SMITH, VENEGAS, and WILLIAMS' actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

113. By repeatedly subjecting Plaintiff to abusive and intrusive sexual acts, SMITH, VENEGAS, and WILLIAMS caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

114. SMITH, VENEGAS, and WILLIAMS acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

115. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical

injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

116. These allegations are asserted against DOES 1-25, inclusive.

117. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)

### (Against UNITED STATES, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive)

118. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

119. Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES, SMITH, VENEGAS, and WILLIAMS. The UNITED STATES ratified the conduct of SMITH, VENEGAS, and WILLIAMS.

120. SMITH, VENEGAS, and WILLIAMS violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

121. SMITH, VENEGAS, and WILLAMS' sexual abuse of Plaintiff occurred under coercive circumstances.

122. For these reasons, SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

123. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, SMITH, VENEGAS, and WILLIAMS must have subjected Plaintiff to these sexual acts with the intent to cause

THE PRIDE
LAW FIRM

- 26 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

a harmful or offensive contact with Plaintiff's person.

124.   Plaintiff did not and could not consent to the touching.

125.   By intentionally subjecting Plaintiff to sexual acts, SMITH, VENEGAS, and WILLIAMS acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

126.   SMITH, VENEGAS, and WILLIAMS' actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

127.   By repeatedly subjecting Plaintiff to sexual acts, SMITH, VENEGAS, and WILLAMS caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

128.   SMITH, VENEGAS, and WILLIAMS acted with malice and oppression, and her conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

129.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

130.   All these allegations are asserted against DOES 1-25, inclusive.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(FTCA, California common law)**

**(Against UNITED STATES, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive)**

131. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

132. Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES, SMITH, VENEGAS, and WILLIAMS. The UNITED STATES ratified the conduct of SMITH, VENEGAS, and WILLIAMS.

133. SMITH, VENEGAS, and WILLIAMS engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual abuse 3while she was incarcerated as an inmate in his employer's custody. SMITH, VENEGAS, and WILLIAMS abused her authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

134. Plaintiff did not and could not consent to the touching by SMITH, VENEGAS, and WILLIAMS.

135. SMITH, VENEGAS, and WILLAIMS' sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

136. SMITH, VENEGAS, and WILLIAMS intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from her sexual manipulation and violent abuse of an inmate.

137. SMITH, VENEGAS, and WILLIAMS' actions and judgments in

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

138. SMITH, VENEGAS, and WILLIAMS acted with malice and oppression, entitling Plaintiff to punitive damages.

139. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

140. These allegations are asserted against DOES 1-25, inclusive.

### CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive)

141. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

142. Plaintiff brings this claim against the UNITED STATES, SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, under the FTCA based on the actions and/or omissions of UNITED STATES, SMITH, WILLIAMS, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

143. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

144. **Duty**. United States, UNITED STATES, SMITH, VENEGAS,

THE PRIDE
LAW FIRM

- 29 -

WILLIAMS, GARCIA, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

145. **Breach of duty—inadequate supervision**. The United States, UNITED STATES, GARCIA, and DOES 1-25, inclusive, failed to supervise and operate FCI Dublin in a manner that would have prevented SMITH, VENEGAS, and WILLIAMSs ongoing sexual abuse of Plaintiff.

146. The UNITED STATES and GARCIA did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

147. SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES, GARCIA, and DOES 1-25.

148. **Injuries and relief sought**. The actions and omissions of UNITED STATES, SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

149. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected

to endure it.

150. By reason of the UNITED STATES', GARCIA's, and SMITH, VENEGAS, and WILLIAMS' negligent infliction of emotional distress, Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

151. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

152. These allegations are asserted against DOES 1-25, inclusive.

### CLAIM SIX

### BATTERY (FTCA, California common law)

### (Against UNITED STATES, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive)

153. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

154. Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES, SMITH, VENEGAS, and WILLIAMS. The UNITED STATES ratified the conduct of SMITH, VENEGAS, and WILLIAMS.

155. SMITH, VENEGAS, WILLIAMS committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

156. SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff occurred under coercive circumstances.

157. For these reasons, SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted

by the social usages in prison when the contact was made.

158. Given the deeply offensive nature of these acts and lack of any possible penological justification for these acts, SMITH, VENEGAS, and WILLIAM must have subjected Plaintiff to these acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

159. By intentionally subjecting Plaintiff to sexual abuse, SMITH, VENEGAS, and WILLIAMS acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

160. SMITH, VENEGAS, and WILLIAMS actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse and physical violence, that he could not have been making a policy judgment in his decision to abuse Plaintiff.

161. By repeatedly subjecting Plaintiff to sexual abuse, SMITH, VENEGAS, and WILLIAMS caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

162. SMITH, VENEGAS, and WILLIAMS acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

163. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

164. These allegations are asserted against DOES 1-25, inclusive.

THE PRIDE
LAW FIRM

- 32 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## **CLAIM SEVEN**

### **EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT**

### **(Against SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive)**

165. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

166. Plaintiff brings this claim against SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

167. At all material times, SMITH, VENEGAS, WILLAIMS, GARCIA and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

168. SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by SMITH, VENEGAS, and WILLIAMS, by acting in conscious disregard of that known risk.

169. Despite having actual knowledge of abuse, GARCIA, as the warden, ratified SMITH, VENEGAS, and WILLIAMS' conduct by engaging in the same or similar acts as SMITH, VENEGAS, and WILLIAMS with other inmates at FCI Dublin. Therefore, GARCIA, SMITH, VENEGAS, and WILLIAMS purposefully denied Plaintiff protection from the known and substantial risk of serious harm of SMITH, VENEGAS, and WILLIAMS sexual abuse.

170. Prior to Plaintiff's sexual abuse, GARCIA and DOES 1-25 had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation, among other things. GARCIA and DOES 1-25 had a legal duty to investigate complaints of abuse. Despite knowledge

of abuse, GARCIA and DOES 1-25 did not investigate any of the complaints. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. GARCIA and DOES 1-25 consciously allowed inmates, including Plaintiff, to be abused.

171. Based on his position and behavior in the prison, GARCIA and DOES 1-25 knew or should have known that PERP was abusing Plaintiff.

172. GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from SMITH, VENEGAS, and WILLIAMS, in violation of 28 C.F.R. § 115.62.

173. SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

174. SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

175. SMITH, VENEGAS, WILLIAMS, GARCIA, and DOES 1-25 purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

176. SMITH'S, VENEGAS', WILLIAMS', GARCIA's, and DOES 1-25's inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

177. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future

mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

### (Against the UNITED STATES, GARCIA, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive)

178. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

179. Plaintiff brings this claim against the UNITED STATES, GARCIA, SMITH, VENEGAS, WILLIAMS, and DOES 1-25 under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, GARCIA, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the UNITED STATES.

180. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the UNITED STATES in possession and control of FCI Dublin.

181. **Duty**. UNITED STATES, GARCIA, SMITH, VENEGAS, WILLIAMS, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

182. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

183. Alternatively, UNITED STATES, GARCIA, SMITH, VENEGAS, WILLAIMS, and DOES 1-25, inclusive, had a general duty of care to Plaintiff. SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff was reasonably

foreseeable to the United States because SMITH, VENEGAS, and WILLIAMS' conduct made it obvious he was sexually and physically abusing Plaintiff.

184. **Breach of duty—inadequate supervision**. The UNITED STATES, GARCIA, and DOES 1-25 failed to supervise and operate FCI Dublin in a manner that would have prevented SMITH, VENEGAS, and WILLIAMS' ongoing sexual abuse of Plaintiff.

185. The UNITED STATES and GARCIA did not take reasonable, available measures to abate the risk of abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

186. SMITH, VENEGAS, and WILLIAMS' sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES, GARCIA, and DOES 1-25.

187. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

188. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;

2. Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3. Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);

4. An award to Plaintiff of reasonable costs; and

5. An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6. Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: December 22, 2025                **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride

Jessica K. Pride

Email: jpride@pridelawfirm.com

Attorneys for Plaintiff

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL